**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| **MIKAYLA PRETZSCH**, individually and on behalf of all similarly situated individuals, | ) ) ) ) | **Case Number:** |
|  | ) | **Judge:** |
| Plaintiff, | ) ) | **Magistrate Judge:** |
| v. | ) ) | |
| **FOCUS SERVICES, LLC, AND FOCUS SERVICES ILLINOIS, LLC**, | ) ) ) | **CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND** |
| Defendants | ) ) | |

Plaintiff, MIKAYLA PRETZSCH ("Plaintiff"), by and through the undersigned attorneys, brings this Complaint against Defendants, FOCUS SERVICES, LLC, AND FOCUS SERVICES ILLINOIS, LLC ("Defendants" or "Focus Services"), individually and on behalf of all similarly situated individuals and states as follows:

## INTRODUCTION

1.     This is a class and collective action brought by Plaintiff on her own behalf and on behalf of all similarly situated current and/or former Customer Service Representative employees ("CSRs") of Defendants to recover for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. §§ 105 *et. seq.*, Illinois Wage Payment and Collection Act (IWPCA), 820 Ill. Comp. Stat. § 115, *et. seq.*, alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendants' various call center locations, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and

1

postliminary activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit 1, at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift job-related activities must be kept." *Id.*

3.      Plaintiff, and those similarly situated, were subjected to Defendants' policy and practice of failing to compensate its call center employees for their necessary pre-shift activities, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

4.      Plaintiff seeks a declaration that their rights, and the rights of the putative FLSA Collective Class and the putative Rule 23 Class, were violated; and seek to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. §§ 201, *et seq.*

6.      This Court also has subject-matter jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      Upon information and belief, Defendants' annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.

8.     This Court has supplemental jurisdiction over the Illinois state law wage and hour class pursuant to 28 U.S.C. § 1367 because all Illinois state law wage and hour claims are so related to the federal claims that "they form part of the same case or controversy" such that they should be adjudicated in one judicial proceeding.

9.     This Court has personal jurisdiction over Defendants because it does business within this District in the State of Illinois.

10.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## PARTIES

11.     Plaintiff, MIKAYLA PRETZSCH, is an individual who resides in the County of Lee, City of Dixon, Illinois.

12.     Plaintiff was employed by Defendants as an hourly employee from approximately December 2017 through December 2018 as a Customer Service Representative.

13.     Plaintiff's most recent hourly rate was $11.25, and her hourly rate when she started working for Defendants was $8.25.

14.     Plaintiff regularly worked in excess of forty (40) hours per workweek.

15.     Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and her Consent to Sue is attached hereto as Exhibit 2.

16.     Defendants FOCUS SERVICES, LLC, AND FOCUS SERVICES ILLINOIS, LLC., offer customer service solutions that includes, but is not limited to, telephone calls, email, and chat services.[1]

---

[1] https://www.focusservices.com/services/ (last visited May 24, 2019).

17.     Defendants' call center services are "the front lines of your business, and we hear it all—what's working and most definitely what is not. We bring those valuables back to you and help you sharpen up your solutions to keep customers coming back."[2]

18.     Defendants FOCUS SERVICES, LLC, AND FOCUS SERVICES ILLINOIS, LLC., are both Colorado Limited Liability Corporations with a principal place of business located at 457 E 26th Street, Ogden, UT 84401. Defendants can be served through their Registered Agent, BTJD CORPORATE SERVICES, INC, located at 3165 E MILLROCK DR #500, Salt Lake City, UT 84121.

## GENERAL ALLEGATIONS

19.     The fundamental protections afforded by the FLSA and the Illinois laws covering wages and hour include payment of premium overtime wages for all hours worked above forty (40) hours per week.

20.     Plaintiff and the other similarly situated individuals were, or are, employed by Defendants as hourly CSRs or other job titles performing similar job duties.

21.     Plaintiff was employed by Defendants as an hourly call center CSR employee from December 2017 until approximately December 2018.

22.     Defendants assigned Plaintiff to answer customer calls for Defendants' clients, for example, Century Link and Charter Communications.

23.     Plaintiff's primary job duties were to answer questions from callers, obtain basic profile information, and discuss services offered by Defendants' clients.

24.     Plaintiff's most recent hourly rate was approximately $11.25 per hour.

25.     Throughout Plaintiff's employments with Defendants, she regularly worked at least

---

[2] *Id.*

40 hours per workweek.

26.     Regardless of whether Plaintiff was scheduled to work a workweek totaling under 40 hours, scheduled to work a workweek totaling 40 hours, or scheduled to work a workweek totaling in excess of 40 hours, Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of her CSR job duties. Plaintiff was never compensated for this time worked off-the-clock.

27.     29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

28.     29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

***Pre-Shift Off-the-Clock Work***

29.     Plaintiff was tasked with providing Defendants' clients with customer service by use of Defendants' telephones, Defendants' computers, and the programs accessible from Defendants' computers.

30.     Defendants required Plaintiff, and all other current and/or former hourly CSRs, to arrive at the call center before their scheduled shifts to boot up their computers, launch and log into necessary programs, servers, and applications, and log into Defendants' phone systems to ensure they were ready to take their first call at their scheduled shift start. This pre-shift procedure regularly takes 15 minutes per shift, or even as much as 30 minutes or more if technical issues arise. Only after this process was completed was Plaintiff allowed to clock-in to Defendants' timekeeping system at the

5

scheduled start of their shifts.

31.     The pre-shift boot-up procedure was integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendants' business.

32.     The unpaid pre-shift off-the-clock work performed by Plaintiff, and all other current and/or former hourly CSRs, directly benefits Defendants.

***Defendants' Policy and Practice of Off-the-Clock Work Violated Federal and State Laws.***

33.     At all times relevant, Defendants suffered or permitted Plaintiff, and all other current and/or former hourly CSRs, to routinely perform off-the-clock pre-shift work by not allowing its employees to clock-in until *after* the pre-shift procedure was complete. Defendants would not allow Plaintiff, and all other current and/or former hourly CSRs, to clock into the time keeping system through Defendants' system until their scheduled shift start time.

34.     Defendants knew, or should have known, that its employees are required to be paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221.

35.     Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former hourly CSRs, for their off-the-clock pre-shift compensable work performed in any amount.

36.     Defendants knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires it to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable off-the-clock pre-shift work performed.

37.     Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former hourly CSRs, for their off-the-clock pre-shift compensable work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

38.     Defendants knew, or should have known that, under the IMWL, Plaintiff should have been paid for all hours in excess of forty (40) hours per workweek "at a rate not less than 1

½ times the regular rate" at which she was employed.  820 Ill. Comp. Stat. § 105/4a(1).

39.     Despite this, Defendants failed to pay Plaintiff, and other similarly situated current and/or former CSRs, overtime at one and one-half times their regular rates.

40.     Defendants knew, or should have known that under the IWPCA, Defendants were required to pay all earned wages "not later than seven (7) days after the end of the weekly pay period in which the wages were earned." 820 Ill. Comp. Stat. § 115/4.

41.     Despite this, Defendants failed to pay Plaintiff, and other similarly situated current and/or former CSRs, for their off-the-clock overtime work performed ever.

42.     In reckless disregard of the FLSA, the IMWL, and the IWPCA protections afforded to Plaintiff and similarly situated individuals, Defendants adopted and then adhered to its policy and plan that denied payment of overtime premiums at one-and-one half times the regular rate for hours worked in excess of forty (40) in a workweek.

***Recordkeeping.***

43.     29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

44.     The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

45.     Upon information and belief, Defendants failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

46.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an

> employee has carried out his burden if he proves that he has in fact
> performed work for which he was improperly compensated and if
> he produces sufficient evidence to show the amount and extent of
> that work as a matter of just and reasonable inference. The burden
> then shifts to the employer to come forward with evidence of the
> precise amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court
> may then award damages to the employee, even though the result be
> only approximate.

47.     The Supreme Court set forth this test to avoid placing a premium on an employer's

failure to keep proper records in conformity with its statutory duty, thereby allowing the employer

to reap the benefits of the employees' labors without proper compensation as required by the

FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to

complain that the damages lack the exactness and precision of measurement that would be possible

had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on her own

behalf and on behalf of:

> *All current and former Customer Service Representatives or other*
> *job titles performing similar job duties employed by Focus Services*
> *at any time during the last three years*.

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this

definition as necessary.

49.     Plaintiff does not bring this action on behalf of any executive, administrative, or

professional employees exempt from coverage under the FLSA.

50.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*:  With

respect to the claims set forth in this action, a collective action under the FLSA is appropriate

because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to

Plaintiff.  The class of employees on behalf of whom Plaintiff brings this collective action are

similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendants' practices, policy, or plan of not paying their call center for their pre-shift compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

51.     Upon information and belief, Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of Court-supervised notice of this action and the opportunity to join it. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

52.     Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether she is entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4) on behalf of a putative Class defined to include:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by Focus Services in Illinois at any time during the last three years.*

(hereinafter referred to as the "Illinois Class"). Plaintiff reserves the right to amend the putative class definition as necessary.

54. *Numerosity:* The members of the Illinois Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

55. *Commonality/Predominance:* There is a well-defined community of interest among Illinois Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the hours worked in excess of forty (40) in any given workweek by the Illinois Class is compensable at a rate not less than 1 1/2 times their regular rate of pay under the IMWL;

b. Whether Defendants' failed to compensate the Illinois Class for their pre-shift off-the-clock work within 7 days of the work being performed;

c. Whether Defendants violated the IMWL and the IWPCA through its pay practices;

d. Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the IMWL and the IWPCA; and

e. Whether Defendants' violations of the IMWL and the IWPCA were willful.

56. *Typicality:* Plaintiff's claims are typical of those of the Illinois Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, and course of conduct as all other Illinois Class members' claims and Plaintiff's

legal theories are based on the same legal theories as all other Illinois Class members: whether all Class members were employed by Defendants on an hourly basis without receiving compensation at the overtime premium rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) in any given workweek and whether wages are owed for that work.

57.     *Adequacy:*  Plaintiff will fully and adequately protect the interests of the Illinois Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions.  Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Illinois Class.

58.     *Superiority:*  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

59.     The case will be manageable as a class action.  Plaintiff and her counsel know of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease.  Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[3]

60.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) and (c)(4), on behalf of a putative Class defined to include:

> *All current and former Customer Service Representatives or other job titles performing similar job duties employed by Focus Services at any time during the last three years.*

(hereinafter referred to as the "Nationwide Class"). Plaintiff reserves the right to amend this definition as necessary.

61.     *Numerosity*: The members of the Nationwide Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

62.     *Commonality/Predominance*:   There is a well-defined community of interest among Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a.   Whether Defendants offered to pay Plaintiff and the Nationwide Class certain rates (depending on the technical job titles) per hour for each hour worked as CSRs;

   b.   Whether Plaintiff and the Nationwide Class accepted Defendants' offer by performing the essential functions of the job;

   c.   Whether Defendants breached the contract by failing to pay Plaintiff and the Nationwide Class for each and every hour worked; and

   d.   Whether Plaintiff and the Nationwide Class were damaged.

---

[3] To the extent the Court finds, or Defendants argue, the employment relationship between itself and its CSRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's quasi-contractual claims (Count IV).

63. *Typicality*: Plaintiff's claims are typical of those of the Nationwide Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Nationwide Class members: whether the Nationwide Class members were employed under an implied contract to be paid for each and every hour worked by Defendants.

64. *Adequacy*: Plaintiff will fully and adequately protect the interests of the Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Nationwide Class.

65. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Nationwide Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

66. The case will be manageable as a class action. This class action can be efficiently

and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Nationwide Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and their counsel know of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## <u>COUNT I</u>

### <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES</u>

67. Plaintiff re-alleges and incorporates all previous paragraphs herein.

68. At all times relevant to this action, Defendants were an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

69. Defendants are engaged in interstate commerce or the production of goods for commerce, as defined by the FLSA.

70. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

71. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

72. The position of Customer Service Representative is not exempt from the FLSA.

73. Defendants' other job titles performing similar Customer Service Representative

14

job duties are not exempt from the FLSA.

74.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

75.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

76.     Defendants violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

77.     Upon information and belief, Defendants have corporate policies of evading overtime pay for its hourly workers.

78.     Defendants' violations of the FLSA were knowing and willful.

79.     By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated hourly CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to current and former hourly CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendants in the same or similar position as Plaintiff.

80.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

81.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II
### (Class Action)
### VIOLATION OF THE IMWL

82.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

83.     At all times relevant to the action, Defendants were an "employer" under the IMWL, 820 Ill. Comp. Stat. § 105/3(c), subject to the overtime mandates of the IMWL, 820 Ill. Comp. Stat. § 105/4a(1).

84.     Plaintiff and the Illinois Class are "employees" under the IMWL, 820 Ill. Comp. Stat. § 105/3(d), entitled to the protections of the IMWL, 820 Ill. Comp. Stat. § 105/4a(1).

85.     The IMWL requires all hours in excess of forty (40) hours per workweek be paid "at a rate not less than 1 ½ times the regular rate" at which the employee was employed.  820 Ill. Comp. Stat. § 105/4a(1).

86.     The IMWL entitles employees to bring a civil action to recover "the amount of any underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 Ill. Comp. Stat. § 105/12(a).

## COUNT III

### (National Breach of Contract Class Action)
### BREACH OF CONTRACT

87.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

88.     At the times Plaintiff and the Nationwide Class were hired by Defendants, Defendants offered to pay Plaintiff and the Nationwide Class certain rates per hour for each hour worked as a CSR. Each Nationwide Class members' contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

89.     Plaintiff and the Nationwide Class accepted the offer and worked for Defendants as CSRs.

90.     Plaintiff and the Nationwide Class also accepted the offer by their performance— i.e., reporting for work and completing the tasks assigned to them.

91.     Plaintiff's work, and the work of the Nationwide Class, required pre-shift boot up time.

92.     Plaintiff and every other Nationwide Class member performed under their contract by doing their jobs in addition to carrying out the pre-shift activities that Defendants required.

93.     Upon information and belief, Defendants do not allow its employees to clock in to begin being compensated until after the pre-shift boot up procedures are complete.

94.     Despite being required to complete these pre-shift job duties, Plaintiff and the Nationwide Class were not compensated at their hourly rate for their work performed.

95.     By failing to pay Plaintiff and the Nationwide Class for the pre-shift boot up time, Defendants breached its contract with Plaintiff and the Nationwide Class to pay their hourly rate for each hour worked.

96.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Nationwide Class members spent doing pre-shift activities, which is a fundamental part of an employer's job.

97. In sum, the facts set forth above establish the following elements and terms of the contract:

      a.    Offer: a set hourly rate for each hour worked as a CSR;

      b.    Acceptance: Plaintiff and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendants);

      c.    Breach: Defendants did not pay Plaintiff and the Nationwide Class for each hour (or part thereof) worked; and,

      d.    Damages: By failing to pay Plaintiff and the Nationwide Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be proven at trial.

98. These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

99. As a direct and proximate cause of Defendants' breach, Plaintiff and the Nationwide Class were damaged at an amount to be proven at trial.

**COUNT IV**

**QUASI-CONTRACTUAL REMEDIES**
**UNJUST ENRICHMENT**

100. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

101. Upon information and belief, Plaintiff's and every other Nationwide Class members' pre-shift boot up time provided valuable work and income for Defendants; namely, compensation to Defendants for completing customer service activity that directly benefited Defendants.

102. *Pre-Shift Boot up Time*: Plaintiff and the Nationwide Class were unable to perform any job function without booting up and logging in to their computer and required programs. In short, in order to start their work of fielding customer calls precisely at their designated start time,

Plaintiff and the Nationwide Class worked off-the-clock before their shift began. Without the pre-shift boot-up time, Plaintiff and the Nationwide Class were unable to take customer calls at their designated start time. Further, upon information and belief, Defendants do not allow their employees to clock in to begin being compensated until after the pre-shift procedures are complete.

103.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary pre-shift boot up activities, Defendants have been unjustly enriched at the expense of Plaintiff and the Nationwide Class in an amount to be determined at trial.

104.    By not paying Plaintiff and other Nationwide Class members for the time they spent performing necessary activities, Defendants also saved itself hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff's and Nationwide Class members' benefit.

105.    It would be unjust and inequitable to allow Defendants to retain the benefit of the work performed by Plaintiff and the Nationwide Class without compensation.

106.    These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States

107.    As a direct and proximate cause of Defendants' unjust enrichment, Plaintiff and the Nationwide Class were harmed at an amount to be proven at trial.

## **COUNT V**

### **(Class Action)**
### **VIOLATION OF THE IWPCA**

108.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

109.    The IWPCA requires "[a]ll wages earned by any employee during a weekly pay period shall be paid not later than seven (7) days after the end of the weekly pay period in which the wages were earned.  820 Ill. Comp. Stat. § 115/4.

110.    "To state a claim under the IWPCA, a plaintiff must show that wages or compensation are due under a valid contract or agreement." *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 705 (N.D. Ill. 2016).

111.    The IWPCA entitles employees to "file suit in circuit court of Illinois, in the county where the alleged violation occurred or where any employee who is party to the action resides, without regard to exhaustion of any alternative administrative remedies" to recover "the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid . . . costs and all reasonable attorney's fees."  820 Ill. Comp. Stat. § 115/11 and 115/14(a).

112.    Defendants violated the IWPCA by regularly and repeatedly failing to compensate employees their overtime compensation at a rate not less than one and on-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek and therefore, failing to pay Plaintiff all her earned wages within 7 days after the end of the weekly pay period in which the wages were earned.

113.    As a result of Defendants' violations of the Illinois Acts, Plaintiff and the Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Illinois Class are entitled to recover unpaid wages owed, plus costs, attorneys' fees, and other appropriate relief under the Illinois Acts at an amount to be proven at trial.

**WHEREFORE**, Plaintiff requests the following relief:

A.  An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

B. An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. An Order certifying this action as a class action (for the Rule 23 Breach of Contract Nationwide Class or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

E. An Order designating the Plaintiff to act as the Nationwide Class Representative on behalf of all similarly situated individuals for both the FLSA Collective and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

F. An Order designating Plaintiff to act as the Class Representative for the Rule 23 Illinois Class;

G. An Order declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

H. An Order declaring that Defendants violated its obligations under the FLSA;

I. An Order declaring that Defendants willfully violated the IMWL and their attendant regulations as set forth above;

J. An Order declaring that Defendants violated its obligations under the IMWL;

K. An Order declaring that Defendants willfully violated the IWPCA and their attendant regulations as set forth above;

L. An Order declaring that Defendants violated its obligations under the IWPCA;

M. An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid minimum wages and overtime pay calculated at the rate of one and one-half (1.5) Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week for the past three years for the FLSA Class and the Illinois Class;

N. An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff under the FLSA;

O. An Order granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid regular wages owed calculated at Plaintiff's

regular rate multiplied by all hours that Plaintiff worked off-the-clock up to 40 hours per week for the past three years for the Illinois Class;

P.  Awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and awarding Plaintiff and the class members all other available compensatory damages, including, *inter alia*, all unpaid wages, lost interest owed, and liquidated damages by Defendants under the IMWL and the IWPCA;

Q.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

R.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

S.  An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated: May 30, 2019

Respectfully submitted,

s/ Peter J. Flowers

Peter J. Flowers (06210847)
**MEYERS & FLOWERS, LLC**
3 North Second Street, Suite 300
St. Charles, Illinois 60174
Telephone: (630) 232-6333
Fax: (630) 845-8982
pjf@meyers-flowers.com

*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 391892)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*